O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEMARY GARRETT, | NO. EDCV 07-549-MAN |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| | AND ORDER |
| MICHAEL J. ASTRUE, | |
| Commissioner of the | |
| Social Security Administration, | |
| Defendant. | |

Plaintiff filed a Complaint on May 16, 2007, seeking review of the denial by the Social Security Commissioner ("Commissioner") of her application for supplemental security income benefits ("SSI"). The parties filed a Joint Stipulation on December 11, 2007, in which: Plaintiff seeks an order reversing the Commissioner's decision and directing the immediate award of benefits; and Defendant requests that the Commissioner's decision be affirmed or, in the alternative, a remand for further proceedings be ordered. On August 5, 2008, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff claims to have been disabled since April 30, 2003. (Administrative Record ("A.R.") 254.) Plaintiff alleges that she is disabled because of an injured leg, right hip and shoulder, dyslexia, asthma, and a learning disability. (A.R. 231, 259.) She has past relevant work experience as an in-home care giver, a nurse's assistant, and a person who collects signatures for petitions. (A.R. 289.)

Plaintiff filed her application for SSI on July 15, 2003. (A.R. 13.) The Commissioner denied Plaintiff's claim initially on December 9, 2003, and upon reconsideration on January 9, 2004. (*Id.*) On January 5 and March 2, 2005, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Mason D. Harrell ("ALJ"). (A.R. 138-224.) On March 24, 2005, the ALJ denied Plaintiff's claim. (A.R. 230-41.)

Plaintiff sought review by the Appeals Council, which remanded the case because segments of the oral hearing tape were partially inaudible, and therefore, the record was incomplete. (A.R. 33-36.) On October 3, 2006, the ALJ held another hearing, at which Plaintiff, again represented by counsel, testified. (A.R. 103-37.) On December 18, 2006, the ALJ again denied Plaintiff's claim. (A.R. 13-21.) The Appeals Council subsequently denied Plaintiff's request for review of that decision. (A.R. 5-7.)

///
///
///

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that Plaintiff had the following severe impairments: (1) below average intelligence; (2) an unspecified learning disorder; (3) a personality disorder with immature features; and (4) a history of substance abuse currently in sustained remission since April 2003. (A.R. 15.)  He concluded that such impairments, however, did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 40, Subpart P, Appendix 1, the Listing of Impairments.  (*Id.*)

Based on the medical records and medical testimony, the ALJ found that Plaintiff's severe impairments caused her:  "no limitations of activities of daily living; mild difficulties with social functioning; and mild difficulties with concentration, persistence, and pace [with] no evidence of decompensation of extended duration."  (A.R. 15.) Additionally, the ALJ found that Plaintiff "has the ability to do work with the following non-exertional limitations:  she is limited to simple work in a normal or habituated work-setting, with up to three steps of instruction; she is precluded from work involving reading or math over the third grade level, but she can read simple signs and do simple calculations; and she is precluded from safety operations, jobs requiring hypervigilance, a fast pace, high production, or working with the public."  (A.R. 16.)

The ALJ further found that, for purposes of Step Four of the Commissioner's five-step sequential analysis, Plaintiff can perform her past relevant work as an in-home care provider if the job is available as a day worker, and for purposes of Step Five, she can perform

additional jobs that exist in significant numbers in the national economy, such as assembler of buttons, optical assembler, and sorter of small produce. (A.R. 19-21.) Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (A.R. 21.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003)(citation omitted). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d

4

1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following two issues: (1) did the ALJ properly find that Plaintiff's condition does not meet the Listing of Impairments; and (2) does the testimony of the vocational expert commend reversal with an order to calculate benefits.

**I.   <u>The ALJ's Finding That Plaintiff's Impairments Do Not Meet or Equal A Listing Is Not Supported By Substantial Evidence</u>.**

Conditions contained in the Listing of Impairments ("Listings") are considered so severe that "they are **irrebuttably** presumed disabling, without any specific finding as to the claimant's ability to perform his

5

past relevant work or any other jobs." <u>Lester v. Chater</u>, 81 F.3d 821, 828 (9th Cir. 1995)(emphasis added).  The Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532 (1990).  If a claimant shows that her impairments meet or equal a Listing, she will be found presumptively disabled.  20 C.F.R. §§ 416.925-416.926.

Plaintiff contends that the evidence establishes that she meets Listing 12.05C.  In order to be considered disabled under Listing 12.05C, Plaintiff must show the following:

> 12.05 Mental Retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairments before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

>     . . . .

> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Part 404, Subpt. P, App. 1 § 12.05.C.

6

As noted above, the ALJ found that Plaintiff has severe mental impairments, but concluded that they did not meet or equal a Listing. The ALJ expressly based his conclusion that no Listing was satisfied on the testimony of the medical expert, Dr. J. Malancharuvil (the "ME"), at the initial January 5, 2005 hearing prior to the Appeals Council's remand.[1]  (A.R. 15, 111; *see also* A.R. 18, 19, noting that, as to the opinion evidence of record, "I have given the greatest weight" to the ME's testimony.)  More precisely, the ALJ based his Step Three finding on his own summary, without citation to the record, of the ME's testimony.  (*See* A.R. 17.)  The pertinent portions of the ME's January 2005 testimony are as follows:

The ME opined that Plaintiff did not meet any of the requirements of the Listings and did not meet Listing 12.05C.  (A.R. 176-77.)  He testified that his conclusion on this question was based upon the October 1, 2003 opinion of a consultative examiner, Clifford Taylor, a clinical psychologist,[2] who performed a number of tests on Plaintiff.  (A.R. 179; *see* A.R. 528-34, Dr. Taylor's report.)  Although, as reflected in the transcript, the ME's testimony was inaudible at

---

[1]  The ME actually testified only once, *i.e.,* at the January 2005 hearing.  (A.R. 175-88.)  With the agreement of Plaintiff's counsel, the ME appeared at the most recent (October 2006) hearing by telephone, and his sole "testimony" was a statement that the ALJ's original, vacated decision accurately set forth the ME's prior testimony.  (A.R. 108, 111.)

[2]  The ALJ incorrectly describes Dr. Taylor as Plaintiff's "primary treating physician."  (A.R. 17.)  In fact, Dr. Taylor performed a consultative examination of Plaintiff on one occasion only, at the request of the Commissioner.  (A.R. 528.)

7

numerous points,[3] it appears that the ME:  noted Dr. Taylor's findings of a verbal IQ of 70, a performance IQ of 83, and a full-scale IQ of 74; and opined that these and other test results are consistent with a learning disability rather than an intellectual ability problem.  (A.R. 179, 183.)

When questioned by Plaintiff's counsel, the ME stated that, with IQ testing, there is a margin of error of up to three to six points, so that an IQ score of 70 could reflect a score as low as 64 or as high as 76, and that with all IQ tests, "accuracy is always in a range."  (A.R. 181-82.)  When asked if the record indicated that Dr. Taylor had found his verbal IQ assessment of Plaintiff to be "valid," the ME asserted that, "as far as validity," Dr. Taylor "said" Plaintiff's IQ score is "an under-estimation of the actual ability."  (A.R. 182.)  The ME was then questioned about this assertion, and his somewhat garbled testimony, as transcribed, reads as follows:  "It was an under-estimation then the [INAUDIBLE] to go about what is obtained by his clinical judgment."  (*Id.*)

In concluding that Plaintiff does not meet Listing 12.05C, the ALJ expressly relied on the above-noted ME testimony.  The ALJ characterized the ME's testimony as establishing that Dr. Taylor "said the score [of

---

[3]      The Court notes, and is troubled by, the fact that the ME's January 2005 testimony on this critical issue was inaudible in numerous respects.  (*See* A.R. 179-83.)  Significantly, the Appeals Council vacated the ALJ's prior decision and remanded specifically due to inaudibility problems with the January 2005 hearing recording, and expressly directed the ALJ to "take any further action needed to complete the administrative record."  (A.R. 35-36.)  The ALJ, however, did not obtain updated and fully audible testimony from the ME and, instead, elected to rely on the ALJ's *own* description of that earlier, and partially inaudible, testimony.

70] was valid but an underestimation of [Plaintiff's] true intelligence." (A.R. 15, 17.)

The threshold, critical flaw in the ALJ's analysis and in the ME's testimony is their assertion that Dr. Taylor questioned the validity of his verbal IQ assessment and opined that Plaintiff's verbal IQ score of 70[4] underestimated her verbal IQ -- a proposition that misstates the record. Dr. Taylor performed a psychological evaluation of Plaintiff and administered four tests to her as part of his consultative examination: a Bender Visual-Motor Gestalt Test - Second Edition; Trail Making Tests - Form A & B; Wechsler Adult Intelligence Scale - Third Edition (WAIS-III); and Wechsler Memory Scale - Third edition (WMS-III). (A.R. 528, 531.) In his report, he discussed each of his test findings in separate, narrative sections. (A.R. 531-33.) Within the narrative discussion of the WMS-III test results, Dr. Taylor expressly opined that the "results appear to be valid and accurately reflect current levels of memory and learning abilities"; however, within the narrative discussions of the other three tests results, he made no explicit comment as to the accuracy of his findings. (*Id.*) Subsequently, at the outset of the conclusion/summary section of his report, Dr. Taylor stated: "This claimant was in pain and was impulsive and appeared to move quickly. The test scores are mildly below her ability." (A.R. 533.) Dr. Taylor, however, did not identify the test scores to which

---

[4]    Under the Commissioner's regulations, it is irrelevant that Plaintiff's scores on the other portions of the Wechsler test exceeded 70. 20 C.F.R. § 404, Subpart P, App. I, Section 12.00.D.6.c ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full-scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.").

1   this comment pertained, nor did he explain the basis for this statement,

2   particularly in light of his seemingly inconsistent statements regarding

3   Plaintiff's cooperation and provision of adequate effort in connection

4   with her testing.  (*See* A.R. 528, noting that Plaintiff "was cooperative

5   and gave [an] adequate effort"; A.R. 530, noting that Plaintiff "gave

6   minimal but adequate effort on the testing.")

7

8        The ME's insinuation that the validity of Dr. Taylor's verbal IQ

9   assessment was undermined by his purported opinion that Plaintiff's

10  verbal IQ score of 70 underestimated her actual abilities is simply not

11  a fair or accurate description of the record.  The ALJ's acceptance of

12  the ME's inaccurate description of Dr. Taylor's opinion was neither

13  reasonable nor appropriate, particularly given the garbled, inaudible

14  nature of the ME's testimony regarding Dr. Taylor's findings.

15  Therefore, this inaccurate proposition -- the primary basis upon which

16  the ALJ and the ME found that Listing 12.05C was not met -- does not

17  constitute substantial evidence.

18

19       Significantly, the ALJ did not expressly find that Dr. Taylor's

20  assessment of Plaintiff's verbal IQ score of 70 was not "valid," and

21  made no express finding on this question.  Instead, the ALJ simply

22  reiterated the ME's above-noted inaccurate characterization of Dr.

23  Taylor's opinion[5] as well as the ME's assertion that, in IQ testing,

24

25       [5]  If, in the light of Dr. Taylor's statement that Plaintiff
     cooperated and performed adequately, the ALJ perceived Dr. Taylor's
26   opinion regarding Plaintiff's verbal IQ score to be ambiguous based on
     Dr. Taylor's subsequent unexplicated allusion to unspecified test scores
27   being mildly below her ability, the ALJ had the duty to ask Dr. Taylor
     to explain his ambiguous comment.  *See, e.g.*, 20 C.F.R. § 416.927(c)(3);
28   Smolen v. Chater, 80 F.3d 1279, 1288 (9th Cir. 1996).  That the ALJ did

                                      10

there can be a margin of error of six points.  The ME's margin of error testimony does not constitute substantial evidence based upon which Plaintiff's verbal IQ score of 70 can be called into question.  The ME stated that *all* IQ testing is subject to potential margins of error and "accuracy is always in a range." (A.R. 182.)  The Commissioner's regulations nonetheless expressly base Listing 12.05C on IQ tests scores within a particular, fixed numerical range, *i.e.,* 60 through 70, regardless of any range of accuracy that may apply to such scores. Plaintiff's verbal IQ score of 70 is within the specific IQ range necessary to invoke Listing 12.05C.[6]

As the ALJ made no express invalidity finding and cited no legitimate basis for questioning the validity of Dr. Taylor's assessment of Plaintiff's verbal IQ score, the evidence of record is uncontradicted that Plaintiff has been assessed with a valid verbal IQ score of 70. Accordingly, Plaintiff has satisfied the first requirement of Listing 12.05C.  *See* Thresher v. Astrue, 2008 WL 2483377, *1 (9th Cir. June 19, 2008)(finding that, while an ALJ has the ability to decide that an IQ

_____

not do so gives rise to the presumption that he found no ambiguity and accepted the IQ score as valid. *See* Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989)(a reviewing court may draw specific and legitimate inferences from the ALJ's opinion "if those inferences are there to be drawn"). In any event, even if the ALJ's mere unquestioning reiteration of the ME's inaccurate characterization of Dr. Taylor's opinion could be viewed as an implicit finding by the ALJ that Plaintiff's verbal IQ score is invalid (and the Court is highly dubious that doing so would be appropriate), any such implicit "finding" does not rest on substantial evidence and, thus, constitutes error.

[6]      ***Adoption of the ALJ's apparent "margin of error" theory for rejecting Plaintiff's verbal IQ score would mean that claimants with IQ scores between 65 and 70 would never meet Listing 12.05C, because given the margin of error, their actual IQ scores could exceed 70.  Such an illogical result is directly contrary to the specific language of the Listing.***

score is not valid, when an ALJ does not expressly find that an IQ score is not valid and the score in the 60-70 range, it qualifies under Listing 12.05C); *see also* Lewis v. Astrue, 2008 WL 191415, *4-*5 (N.D. Cal Jan. 22, 2008)("the ALJ did not explicitly reject the validity of claimant's new IQ score [of 68], so the Court must accept the score as valid," and finding that, as a result, the first requirement of Listing 12.05C was satisfied).[7]

The second requirement of Listing 12.05C is that there be a physical or mental impairment that imposes an "additional and significant work-related limitation of function." The ALJ found that Plaintiff has no physical impairments, but she has the severe mental impairments of below average intelligence, an unspecified learning disorder, and a personality disorder with immature features. (A.R. 15.) The ALJ further found that, based on these severe mental impairments, Plaintiff has the following non-exertional limitations: "she is limited to simple work in a normal or habituated work-setting, with up to three steps of instruction; she is precluded from work involving reading or math over the third-grade level, but she can read simple signs and do simple calculations; and she is precluded from safety operations, jobs

---

[7]    The Court rejects the Commissioner's argument (Joint Stip. at 7) that the first requirement of Listing 12.05C is not met, because Dr. Taylor characterized Plaintiff's intellectual functioning as "borderline-to-low-average range" (A.R. 530, 533) and did not explicitly describe her as mentally retarded.   Dr. Taylor's finding that Plaintiff's verbal IQ score is 70 satisfies the first requirement of Listing 12.05C regardless of any language in his opinion diagnosing or otherwise describing Plaintiff's mental status.   *See* Lewis, 2008 WL 191415, *5, *7 (finding that a verbal IQ score of 68, with an onset date before age 22, necessarily satisfies the first requirement of Listing 12.05C, even when no doctor had diagnosed the claimant with mental retardation and, in fact, the doctor performing the IQ tests had diagnosed her with "'borderline intellectual functioning and not mental retardation.'").

12

requiring hypervigilance, a fast pace, high production, or working with the public." (A.R. 16.)

Numerous Circuits have found that an ALJ's finding of an additional impairment that is severe *ipso facto* satisfies the second prong of Listing 12.05C. *See, e.g.*, <u>Markle v. Barnhart</u>, 324 F.3d 182, 188 (3d Cir. 2003); <u>Nieves v. Sec'y. of Health and Human Services</u>, 775 F.2d 12, 14 (1st Cir. 1985); <u>Castillo v. Barnhart</u>, 2002 WL 31255158, *11-*12 (S.D.N.Y. 2002)(collecting and discussing cases). Indeed, some Circuits have opined that a showing of an impairment that is less than severe may be sufficient to satisfy the Listing's second prong. *Id.; see also* <u>Edwards v. Heckler</u>, 736 F.2d 625, 630 (11th Cir. 1984). The Ninth Circuit has held that the test is whether, as to the additional impairment, "the effect on a claimant's ability is more than slight or minimal." <u>Fanning v. Bowen</u>, 827 F.2d 631, 633 (9th Cir. 1987).

Here, the ALJ found at least one "additional" mental impairment, *to wit*, Plaintiff's personality disorder with immature features, which is "severe" for Step Two purposes. By finding this impairment to be "severe," the ALJ necessarily concluded that this impairment has more "'than a minimal effect on [Plaintiff's] ability to work.'" <u>Smolen</u>, 80 F.3d at 1290 (citing Social Security Ruling 85-28 and <u>Yuckert v. Bowen</u>, 841 F.2d 303 (9th Cir. 1988)); *see also* 20 C.F.R. § 416.921(a) ("[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); Social Security Rule 96-8p, 1996 WL 374184, *2 (a severe impairment has more than a minimal effect on a claimant's ability to do work). Moreover, as quoted above, the ALJ found that Plaintiff's severe

13

impairments have resulted in a number of limitations on her ability to work that clearly are more than slight or minimal.  (A.R. 16.)  As a result, under existing precedent, the second prong of Listing 12.05C necessarily was satisfied by the ALJ's Step Two finding of the existence of this "additional" impairment.  The ALJ's apparent conclusion otherwise was erroneous.[8]

Finally, Plaintiff was 20 years old at the time of Dr. Taylor's October 1, 2003 assessment.  (A.R. 528, 535.)  This satisfies the requirement in the first paragraph of Listing 12.05 that the "evidence demonstrates or supports onset of the impairment before age 22."

Accordingly, for the reasons set forth above, the ALJ's adverse Step Three finding constitutes error.  This error was not harmless, and warrants reversal.[9]

///

///

///

///

---

[8]   The ALJ's decision does not clearly state a finding as to the second prong of Listing 12.05C.  The Court rejects the Commissioner's apparent contention (Joint Stip. at 8) that the ALJ -- by opining that Plaintiff has only "mild mental limitations," based on his conclusion that Plaintiff's testimony about her subjective symptoms, including physical pain, was not credible in the light of several of her "normal life activities" (A.R. 19) -- made an adverse finding as to the second prong of Listing 12.05C.  Even if such a Step Three finding could be inferred from the ALJ's Step Four credibility assessment (and the Court is dubious that doing so would be appropriate), it would not comport with the standard established by the Ninth Circuit in <u>Fanning</u>, <i>supra</i>.

[9]   In Section III, the Court discusses the remedy warranted as a result of this reversible error.  However, the Court first will address Plaintiff's second issue.

14

1   **II.   The ALJ's Reliance On The Vocational Expert's Testimony To Support**
2        **A Finding That Plaintiff Is Not Disabled Was Error**.

3

4        As described above, the ALJ found that Plaintiff has various non-
5   exertional limitations.[10]  (A.R. 16.)  An ALJ generally is required to
6   seek the testimony of a vocational expert ("VE") if the claimant has a
7   significant non-exertional limitation.  *See, e.g.,* Bruton v. Massanari,
8   268 F.3d 824, 827-28 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094,
9   1101-02 (9th Cir. 1999); Desrosiers, 846 F.2d at 579.  A hypothetical
10  posed to a VE must be "accurate, detailed, [and] supported by the
11  record."  Tackett, 180 F.3d at 1101.  If the hypothetical to the VE does
12  not reflect all of the claimant's limitations and/or is not supported by
13  the evidence of record, the VE's testimony has no evidentiary value.
14  Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993); Embrey v. Bowen,
15  849 F.2d 418, 422-23 (9th Cir. 1988); Gallant v. Heckler, 753 F.2d 1450,
16  1456 (9th Cir. 1984).

17

18       Here, the ALJ posed two different hypotheticals to the VE.  In the
19  first hypothetical, the ALJ instructed the VE to assume the following:

20

21            Okay. Ms. Fioretti, the hypothetical that I'm going to
22       give you is pretty much the same one I gave Ms. Porter.  It
23       involves a 20, well, how about the age is really relevant,
24       someone with a ninth grade education who has the following
25       limitations:  the individual would, would not, have problems

26  ─────────────────────

27       [10]   Non-exertional limitations are limitations which do not affect
    the claimant's ability to meet a job's strength demands.  20 C.F.R. §
28  416.969a(c).

with a normal or habitual supervision.  Can handle being told, this is your job.  Do it.  And then have the supervisor check it, check on it then correct it.  But she couldn't handle having a highly demanding supervision, where the supervisor sits by her side.  She would be limited to simple work, up to three steps of instruction at one time.  No requirements for reading, writing, or math above the third grade level.  But simple signs, road signs and simple calculations are okay. She'd be restricted from safety operations, couldn't be responsible for the safety of others, could operate something like a sewing machine okay, but no dangerous machinery like a vehicle or where [there] are more than three steps of operations involved.  And no requirements for hyper vigilance.  No fast paced high production work like that, fast pace and [INAUDIBLE].  Now with those limitations,[11] could someone perform any [of] claimant's prior work?

(A.R. 123-24, the "First Hypothetical.")  The VE responded that someone with the limitations set forth in the First Hypothetical could perform work as a day worker, an unskilled position involving medium work.[12] (A.R. 126.)

     The ALJ then posed a second hypothetical to the VE, adding further

_____

     [11]   These limitations were based on the ME's January 2005 testimony.  (A.R. 177-78, 185-86.)

     [12]   After questioning Plaintiff, the VE concluded that her prior work had not been as a home care giver or home attendant but, in fact, was more limited, namely, it constituted work as a day worker.  (A.R. 124-25.)

16

limitations[13]:

> Okay.  Okay.  Let me, I'm going to add, if the individual
> gets fidgety after sitting an hour and would have to stand or
> stretch one or two minutes every hour, could stand up to 45
> minutes at a time, but and could lift about five pounds, and
> can only bend occasionally.  Now with those limitations would
> it, would it eliminate that job that you identified as a day
> worker?

(A.R. 128, the "Second Hypothetical.")  Based on the added limitations
in the Second Hypothetical, the VE concluded that the job of a day
worker would be eliminated, but that a person with such limitations
would be able to perform "assembly work, such as [an] assembler in
buttons and notions" or an optical assembler.  (A.R. 128-29.)

After the ALJ was finished questioning the VE, Plaintiff's counsel
posed a hypothetical based on the ALJ's Second Hypothetical, with
several limitations added[14]:

> Let's assume you have the [ALJ's] second hypothetical first,
> and in addition you have a person who is irritable and
> impulsive, who has only fair concentration and memory. . . .
> And, who[se] sustained concentration is moderately impaired.

---

[13]   These limitations were based on Plaintiff's March 2005
testimony.  (A.R. 147-49.)

[14]   These additional limitations were based upon Dr. Taylor's
October 2003 opinion.  (A.R. 136, 530, 531, 533.)

1      . . . And you have a person who is in the low average range

2      of visual motor integration as speed of visual processing.

3

4 (A.R. 133, the "Third Hypothetical.")   Based on the additional

5 limitations set forth in the Third Hypothetical, the VE testified that

6 a claimant could not perform the assembly worker jobs she had identified

7 or, indeed, any jobs at all.  (A.R. 134-35, noting "all those factors,

8 the cumulative effect would eliminate the labor market complete[ly].")

9 Upon re-questioning by the ALJ, the VE confirmed her opinion, observing

10 that these additional limitations indicated that the claimant would not

11 be productive for a significant part of the workday, which would

12 preclude the claimant from the labor market.  (A.R. 135-36.)

13

14     In his decision, at Step Four, the ALJ determined that Plaintiff

15 could perform her past relevant work as a day worker, based on the VE's

16 testimony in response to the First Hypothetical.  (A.R. 19.)  While such

17 a finding normally would end the sequential analysis, *i.e.,* require a

18 finding of no disability, the ALJ, nonetheless, proceeded to Step Five.

19 The ALJ concluded that jobs exist in significant numbers in the national

20 economy which Plaintiff can perform, based on the VE's testimony in

21 response to the Second Hypothetical, namely, that a claimant with the

22 limitations identified in that hypothetical could perform certain

23 assembly jobs; the ALJ therefore found Plaintiff not disabled.  (A.R.

24 20-21.)  The ALJ's decision ignored the Third Hypothetical, and the VE's

25 testimony in response to it, entirely.  (A.R. 13-21.)

26

27     The limitations set forth in the First Hypothetical were found by

28 the ME, who in turn premised his findings on the October 2003 report of

Dr. Taylor, the consultative examiner. (A.R. 179: the ME states, "the primary document that I relied on from a psychiatrist/psychological point of view, is Exhibit 9F which is a detailed psychological evaluation with tests that's done October 1st 2003 by a Dr. Taylor who gave her significant number of tests.") The ME's conclusions set forth in the First Hypothetical, however, were based on a selective acceptance of **portions** of Dr. Taylor's opinion. The ME ignored Dr. Taylor's finding that Plaintiff is irritable (A.R. 530), and the ALJ omitted this limitation from the First Hypothetical. The ME also rejected Dr. Taylor's two additional findings (A.R. 531), *i.e.*, that Plaintiff's sustained concentration is moderately impaired and that she is in the low average range of visual motor integration as speed of visual processing. The ME stated that, with respect to these two findings, he had reached his own conclusions based on the test results, regardless of "whatever he [Dr. Taylor] said," and Plaintiff's abilities in these respects are adequate, as she "did very well with these tests." (A.R. 191, 193.) The ALJ, relying on the ME's conclusion, omitted these additional two limitations from the First Hypothetical.

The ALJ did not expressly reject the above-noted three limitations set forth in Dr. Taylor's opinion that were ignored and/or expressly rejected by the ME. However, by finding that the ME's opinion was entitled to the greatest weight and by effectively adopting the ME's testimony in all salient respects, the ALJ implicitly rejected Dr. Taylor's opinion about these limitations and instead adopted the contrary opinion of the ME. *See* <u>Smolen</u>, 80 F.3d at 1286 (by disregarding treating physicians' opinions set forth in letters and making contrary findings, the ALJ "effectively rejected them").

The opinion of an examining physician is . . . entitled to greater weight than the opinion of a nonexamining physician. . . .  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. . . .  And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. . . .

Lester, 81 F.3d at 830 (citations omitted).

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Lester, 81 F.3d at 831 (citation omitted; emphasis in original); *see also, e.g.,* Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990); Gallant, 753 F.2d at 1454.  "'[T]he non-examining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician.'"  Erickson v. Shalala, 9 F.3d 813, 818 n.7 (9th Cir. 1993)(citation omitted).  The opinion of a non-examining physician normally is entitled to less deference than that of an examining physician, as the former has not had the opportunity to conduct an independent examination of the claimant. *See, e.g.*, Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)("the opinion of

20

an examining physician is entitled to greater weight than the opinion of a nonexamining physician"); Andrews, 53 F.3d at 1041; Pitzer, 908 F.2d at 506 n.4 ("the conclusion of a non-examining physician is entitled to less weight than the conclusion of an examining physician").

The opinions of non-examining physicians, including medical experts, can constitute substantial evidence upon which an ALJ may rely when they are "supported by other evidence in the record and are consistent with it." Morgan, 169 F.3d at 600; *see also* Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996)(emphasis in original); *see also* Andrews, 53 F.3d at 1041 (when a nontreating source's opinion contradicts that of the treating or examining physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating or examining physician, the opinion of the treating or examining physician "may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record").

Under these standards, the ALJ's implicit rejection of Dr. Taylor's opinion as to the three additional limitations and the ALJ's reliance, instead, on the ME's opinion, standing alone, was improper.  As noted above, the ME failed to address Dr. Taylor's finding of irritability. The ME rejected Dr. Taylor's opinion about the other two limitations on the ground that the ME drew different conclusions from Dr. Taylor's test results than those drawn by Dr. Taylor.  However, the ME had no clinical

21

data supporting in his opinion in this respect *other* than that generated and relied on by Dr. Taylor.  Put otherwise, the ME relied on the same medical evidence as Dr. Taylor, but simply drew a different conclusion from it.  Under the authorities cited above, given that the ME's opinion contradicted that of Dr. Taylor, an examining physician, and lacked any support apart from Dr. Taylor's findings, the ME's rejection of these limitations on the basis that he drew a different conclusion cannot constitute substantial evidence.  <u>Andrews</u>, 53 F.3d at 1041; <u>Erickson</u>, 9 F.3d at 818 n.7.  Moreover, and critically, the ALJ failed to set forth any specific and legitimate reasons for rejecting Dr. Taylor's opinion in this respect in favor of the ME's opinion.[15]  The ALJ's failure to explicitly reject Dr. Taylor's opinion regarding these three limitations, and his failure to set forth specific and legitimate reasons for crediting the ME over Dr. Taylor, constitutes error. <u>Nguyen</u>, 100 F.3d at 1464-66.

Accordingly, the ALJ erred in omitting the three above-described limitations from the First Hypothetical and the Second Hypothetical.  As both hypotheticals were incomplete, the VE's testimony in response to each that jobs exist which Plaintiff can perform has no evidentiary value.  The ALJ's Step Four and Step Five findings, therefore, are not

---

[15]   The ALJ's mere recitation of the ME's stated grounds for discounting the second and third limitations was neither specific nor legitimate.  The mere fact that the ME disagreed with the conclusions drawn by Dr. Taylor from the test data supplies no valid reason for the ALJ to reject Dr. Taylor's opinion about these limitations without discussion; rather, the ALJ was required to set forth a cogent explanation of why the ME should be believed in this respect rather than Dr. Taylor.  The ALJ made no attempt to explain why the ME's after-the-fact assessment of this data was "better" or entitled to more weight than the assessment made by the physician who actually examined Plaintiff and administered the subject tests.

supported by substantial evidence.  This error is reversible.

**III. <u>Remand And Payment Of Benefits Is Appropriate</u>.**

As indicated above, the Court has found that multiple reversible errors occurred.  The question, therefore, is whether to remand this case for further administrative proceedings or order an award of benefits.

In the Ninth Circuit, the decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  When outstanding issues must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.* at 1179.  However, when no useful purpose would be served by further administrative proceedings, or when the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); *see also* <u>Benecke v. McCarthy</u>, 379 F.3d 587, 593 (9th Cir. 2004); <u>Lester</u>, 81 F.3d at 834; <u>Smolen</u>, 80 F.3d at 1292.  The latter principle governs here based on the dispositive error found in Section I.

For the reasons set forth above, the ALJ erred in finding that Plaintiff does not meet or equal Listing 12.05C.  That error is not one that can be rectified through further administrative proceedings

23

following a remand to the Commissioner.  As set forth above, substantial evidence of record supports finding that Listing 12.05C applies; there are no outstanding issues in this respect.  Hence, under Listing 12.05C, Plaintiff is presumed disabled, and as a result, she is entitled to receive SSI from her claimed onset date consistent with the Commissioner's regulations for the timing of the payment of SSI.[16]

**CONCLUSION**

Accordingly, for the reasons stated above, the Commissioner's decision is REVERSED, and this case is remanded to the Commissioner for the payment of SSI to plaintiff.  Judgment shall be entered in favor of Plaintiff and this action shall be dismissed with prejudice.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 19, 2008

_____
/s/
MARGARET A. NAGLE
UNITED ST2ATES MAGISTRATE JUDGE

---

[16]    In view of the Court's conclusion that an award of benefits is warranted based on the applicability of Listing 12.05C, the Court need not, and does not, decide whether the VE-related error found in Section II also would warrant an award of benefits.